# EXHIBIT 8

1

1    TRANSCRIBED FROM DIGITAL RECORDING

2                   IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
3                           EASTERN DIVISION

4    MARIO VASQUEZ,                    )   Docket No. 09 C 4529
                                       )
5                      Plaintiff,      )
                                       )
6          v.                          )   Chicago, Illinois
                                       )   April 5, 2010
7    JOE DORTHA PARKER, and            )   2:35 o'clock p.m.
     CITY OF CHICAGO,                  )
8                                      )
                       Defendants.     )
9
                    TRANSCRIPT OF PROCEEDINGS - MOTION
10             BEFORE THE HONORABLE SIDNEY I. SCHENKIER

11   APPEARANCES:

12   For the Plaintiff:        GREGORY E. KULIS AND ASSOCIATES
                               BY:  MR. DAVID STEVEN LIPSCHULTZ
13                             30 North LaSalle Street
                               Suite 2140
14                             Chicago, Illinois 60602

15   For Defendant City of     DYKEMA GOSSETT PLLC IL
     Chicago:                  BY:  MR. DANIEL MATTHEW NOLAND
16                             10 South Wacker Drive
                               Suite 2300
17                             Chicago, Illinois 60606

18   For Defendant Parker:     QUERREY & HARROW, LTD.
                               BY:  MR. SCOTT R. ROCHELLE
19                             175 West Jackson Boulevard
                               Suite 1600
20                             Chicago, Illinois 60604

21
                        ALEXANDRA ROTH, CSR, RPR
22                        Official Court Reporter
                        219 South Dearborn Street
23                              Room 1224
                        Chicago, Illinois 60604
24                           (312) 408-5038

25   NOTE:  Please notify of correct speaker identification.

2

1      (Proceedings had in open court:)

2              THE CLERK:  Case No. 09 C 4529, Vasquez versus Parker.

3      Motion.

4              THE COURT:  Good afternoon.

5              MR. LIPSCHULTZ:  Good afternoon, Judge.  David

6      Lipschultz for the plaintiff.

7              MR. NOLAND:  Good afternoon, your Honor.  Daniel

8      Noland for the city.

9              MR. ROCHELLE:  Good afternoon, your Honor, Scott

10     Rochelle for Officer Parker.

11             THE COURT:  All right.  I've got the motion for

12     protective order that's been fully briefed, and then some.  But

13     I did have a couple questions.  And I'm hopeful that you can

14     just provide some factual information that might be useful to

15     me.

16             MR. LIPSCHULTZ:  Okay.

17             THE COURT:  As I understand it, there have been CR

18     files produced pursuant to the protective order, which at

19     present puts them under confidentiality --

20             MR. NOLAND:  Yes.

21             THE COURT:  -- correct?

22             Can you give me an idea of the volume of CR files that

23     have been produced in terms of number of CRs?

24             MR. NOLAND:  I'm not exactly positive.  I think it's

25     in the vicinity of about 20.

3

1          THE COURT:  Okay.

2          MR. NOLAND:  Does that -- maybe David would --

3          MR. LIPSCHULTZ:  I think that's about right.

4          THE COURT:  Now, do any of those CRs represent pending

5   proceedings?

6          MR. NOLAND:  No, we have not produced the open --

7   there are some open files --

8          THE COURT:  All right.

9          MR. NOLAND:  -- which we have not produced.  At this

10  time we have asserted the law enforcement privileges.

11         THE COURT:  Okay.

12         MR. NOLAND:  And I believe the plaintiff has respected

13  that and waiting for those investigations to complete.

14         THE COURT:  All right.  So everything that's been

15  produced is a terminated proceeding?  Or I should say completed

16  proceeding.

17         MR. NOLAND:  Yes.

18         THE COURT:  All right.  With respect to those

19  proceedings, did any of them involve any recommended

20  discipline?

21         MR. NOLAND:  May I have a moment?

22         THE COURT:  Of course you may.

23     (Brief pause.)

24         MR. NOLAND:  Yes.

25         THE COURT:  How many of them?

4

1      MR. NOLAND:  At least one.  I'm going through my file.

2      THE COURT:  Okay.

3   (Brief pause.)

4      MR. NOLAND:  I believe two, your Honor.

5      THE COURT:  Okay.  Now, what I would -- were these

6   investigations -- or I should say were the CRs handled through

7   IPRA or IAD or some of each?

8      MR. NOLAND:  All of them or the two sustained ones?

9      THE COURT:  All of them.

10      MR. NOLAND:  For the most part, the Parker CRs have

11   been investigated through IAD.

12      THE COURT:  Okay.

13      MR. NOLAND:  I believe that there have been -- has

14   been at least one excessive force type complaint.

15      THE COURT:  That would go through IPRA?

16      MR. NOLAND:  IPRA.  It may have been -- I can't

17   remember if it was pre-IPRA or OPS, OPS.

18      THE COURT:  All right.  Now, with respect to two of

19   them where the I guess it would be IAD here recommended

20   discipline, what then happened?  Did it go to the chief?  Did

21   it go to the police board?  Can you tell me the course that it

22   follows once that activity by IAD is done?

23      MR. NOLAND:  I can tell you in general.  I can't --

24   I'd have to study those two particular files in specifics.  In

25   general it would be, depending on the amount of the

1    discipline -- well, either way, it would go through command

2    channel review, which would be either -- one of the

3    supervisors, two other supervisory personnel who don't have

4    direct supervisory authority over him.  They would either

5    concur or not concur either way.

6          Regardless of their decision, it would then, I

7    believe, go to the superintendent's office for final decision

8    on either concurring, not concurring, with the file to

9    determine if it is --

10          THE COURT:  Can I stop you there for a moment?

11          MR. NOLAND:  Yes.

12          THE COURT:  In this particular instance, the two that

13    you mentioned that there was a recommendation on, did those go

14    to the superintendent?

15          MR. NOLAND:  Yes, they would have.  I believe that --

16    I -- my understanding is that any sustained file is

17    ultimately going to make it --

18          THE COURT:  When you say sustained, you're talking

19    about at the IAD or IPRA stage?

20          MR. NOLAND:  Yes, sir.  I believe that any sustained

21    file ultimately will go to the superintendent's office for the

22    final determination.

23          THE COURT:  All right.  And then in this -- those two

24    instances where that happened, were those recommendations of

25    discipline adopted?

1          MR. NOLAND:  I believe so, yes.

2          THE COURT:  Okay.  All right.

3          MR. NOLAND:  And that's based on my recollection.  I

4    don't believe that they were, you know, otherwise overturned or

5    what -- or that the suspension -- I'm sorry, that the

6    recommended discipline was altered.

7          THE COURT:  Okay.  And then did they proceed further

8    to police board review?  Or did they stop at the superintendent

9    level?

10          MR. NOLAND:  I do not believe they -- I -- I -- as I

11    sit here today, I'm not aware of any case going to the police

12    board with Parker.

13          THE COURT:  All right.  Now, we've let Mr. Noland

14    carry the water here on answering these questions.  But other

15    attorneys have these files.  So does everybody agree with what

16    Mr. Noland has said --

17          MR. LIPSCHULTZ:  Yes.

18          THE COURT:  -- generally speaking?

19          MR. LIPSCHULTZ:  I have seen no complaints proceed to

20    the police board.

21          THE COURT:  All right.  Now, in those instances we

22    talked for a moment about where the recommendation by IAD or

23    IPRA or before that OPS was for some discipline.  We talked

24    about the course.  When the recommendation is that no

25    discipline be imposed, I suppose you'd say unsustained --

1          MR. NOLAND:  There would be three choices, either not

2    sustained, exonerated or unfounded.

3          THE COURT:  All right.  In any of those three

4    instances, does the matter then go up through the police

5    department again?

6          MR. NOLAND:  It goes -- sorry.  It would go to the

7    investigators' supervisors.

8          THE COURT:  Within?

9          MR. NOLAND:  Within IAD or --

10          THE COURT:  IPRA.

11          MR. NOLAND:  OPS, IPRA.  And then it -- I believe it

12    would also then go through command channel.  But then that's

13    it, if they all concurred.

14          THE COURT:  Okay.

15          MR. NOLAND:  Would not go to the super --

16          THE COURT:  At that level it wouldn't go to the

17    superintendent?

18          MR. NOLAND:  That's right.  So in other words, not

19    every CR file goes to the superintendent's office.

20          THE COURT:  Okay.  All right.  All right.

21          Well, that -- that information I think is a little bit

22    helpful to me.  You know, I'm looking at the briefs and looking

23    at the various opinions, both the -- you know, the Gekas

24    opinion and all of your debate about what that means or what it

25    doesn't mean, the amendments to the Freedom of Information Act,

1  some of the subsequent opinions by various judges of this

2  district, including Judge Keys was in Dell, right?

3           MR. LIPSCHULTZ:  Correct.

4           THE COURT:  And Judge Valdez in is it Igansias?  Okay.

5           MR. LIPSCHULTZ:  Yes.

6           THE COURT:  And others that touch on this as well.  I

7  guess I -- I've drawn a few conclusions.  And then I want to

8  discuss a few things with you.

9           One conclusion that I've drawn is that I think that

10  the amendments to the Freedom of Information Act kind of render

11  some of the debate about Gekas rather academic because we have

12  a change in some of the statute that is really a fundamental

13  basis for asserting that there is a confidentiality interest;

14  that is, that certain records, if sought through the Freedom of

15  Information Act, would be exempt from production, which to the

16  extent true would certainly show that there is some

17  confidentiality interest.

18           I've looked at the other bases outside the Freedom of

19  Information Act under which the defendants have asserted that

20  these are confidential.  And I really don't find those to

21  support the argument.  So I think it really turns in my

22  judgment on an interpretation of the Freedom of Information

23  Act.

24           And as the briefing went through the reply and

25  surreply and surresponse and so forth, I think the lawyers

1  themselves focused on one particular provision of the amended

2  Freedom of Information Act, and that's 5 ILC S140/7 subpart N,

3  which creates an exemption for records relating to a public

4  body's adjudication of employee grievances or disciplinary

5  cases.  However, this exemption shall not extend to the final

6  outcome of cases in which discipline is imposed.  And I know

7  that Judge Keys and Judge Valdez have a different opinion about

8  the proper interpretation of that provision.

9       It seems to me that it's difficult to say that what

10  IPRA or IAD or OPS I guess before it did is, you know,

11  adjudication.  I mean, they serve an investigative function.

12  And I think that some of the publications by the police board

13  itself say that, drawing a line between the IPRA role as

14  receiving a complaint and investigating complaints, and saying

15  that that's also what the police department does.  And the

16  board's role is to adjudicate similar to a court.

17       So if I were to look at simply that kind of duality,

18  investigation versus adjudication, you know, I would conclude

19  that what IPRA and IAD do is the investigation, not the

20  adjudication.

21       Now, the statute does talk about protection for

22  records relating to an investigation.  And that takes us to a

23  question of whether these investigative documents relate to --

24  I should say the statute says records relating to a public

25  body's adjudication, not investigation.  So to the extent that

1  investigative records relate to an adjudication, I think that

2  the defendants here would have a stronger footing in the

3  statute.

4       But even then it says that those records are not

5  exempt in its -- in situations where the final outcome is the

6  imposition of discipline.

7       So if I go back to our earlier discussion about the

8  CRs in this case, as I understand it, there are two of them

9  that resulted in some discipline.  So it seems to me that there

10 isn't really an argument that they are protected from

11 disclosure under subpart N of that section of the Freedom of

12 Information Act.  And I don't see that they would be subject

13 to, you know, confidentiality.

14      Now, with respect to matters that involve a

15 recommendation at the IPRA or IAD or OPS level of no

16 discipline, either because there is an exoneration or there is

17 a lack of evidence to sustain, it seems to me that to the

18 extent that it does not go to a superintendent, who is the

19 person who imposes discipline, it will be short of a police

20 board.

21      I think it's a tough -- tougher argument to say it

22 relates to the adjudication because essentially, you know, an

23 investigation -- I think at that investigative stage what

24 they're really saying is, there isn't enough here, whether it's

25 because there is exoneration or lack of evidence, that we even

1    have something to adjudicate.

2           So I think that in the situation where it doesn't go

3    either to the police board or at least to the superintendent,

4    at least the way that I would read this provision is, I don't

5    think it really relates to adjudication because I think that

6    what's going on is a decision that there is not enough there to

7    adjudicate.

8           Now, I also want to point out that there are other

9    changes in the Freedom of Information Act that I think at least

10   bear pointing out.  And one of them I want to focus on is

11   subpart 1C.  And that states that personal information

12   contained within public records, the disclosure of which would

13   constitute a clearly unwarranted invasion of personal privacy,

14   unless it's consented to is exempt.

15          But then that section goes on to define what

16   constitutes unwarranted invasion of personal privacy.  And it

17   says that that's information that's highly personal or

18   objectionable to a reasonable person and to which -- I'm

19   sorry -- in which the subject's right to privacy outweighs any

20   legitimate public interest in obtaining the information.

21          The statute then goes on to say that the disclosure of

22   information that bears on the public duties of public employees

23   and officials shall not be considered an invasion of personal

24   privacy.  And to me that -- that has some bearing here in terms

25   of how I interpret the exemption in subpart N because one of

1 the things it seems to me that that's saying is that material

2 that's in files of a public entity that bear on the performance

3 of public duties by an individual are not something which that

4 person has the privacy or confidentiality interest that trumps

5 the public interest in knowing what the person is doing or

6 alleged to be doing in the course of discharge of public

7 activities.

8  It seems to me that to read subpart N then the way

9 that the defendants urge would be to attribute a

10 confidentiality interest in officers in these complaint

11 registers that I think is inconsistent with that formulation in

12 subpart C of the statute.  And so that bears on my analysis.

13  I also want to make reference to my ruling in the

14 O'Malley case, which has been the subject of some flattering

15 commentary by the parties.  And in that case I did recognize a

16 confidentiality interest in these types of records.  That

17 opinion, of course, predated the Gekas opinion, and it pre-

18 dated the amendment to the Freedom of Information Act that

19 we're discussing here and the statutory determination in the

20 Freedom of Information Act in subpart C, that disclosure of

21 information that bears on public duties of public employees

22 shall not be considered an invasion of personal privacy.

23  A confidentiality right that the officers may have has

24 to be founded in some recognized interest.  And I think that's

25 a recognized interest really at state law, not at federal

1   common law.  And so while I think my decision in O'Malley was

2   correct under the statutes and law as interpreted in Illinois

3   at the time, I think that subsequent decisions and statutory

4   revisions have overtaking that.  So I don't feel myself bound

5   by my analysis in O'Malley in light of what has transpired

6   since that time.

7          So where that leads me to is, you know, a conclusion

8   that these CRs that have been produced are not subject to

9   confidentiality.  So right now the protective order in place

10  gives them that confidentiality.  So based on my ruling today,

11  that ought to be amended.

12         Now, there is another provision in the Freedom of

13  Information Act, subpart D, which creates an exemption for

14  records created in the course of administrative enforcement

15  proceedings and any law enforcement or correctional agency for

16  law enforcement purposes, but only to the extent that

17  disclosure would and then do one of seven things.  I think that

18  the parties need to look at whether there is certain

19  information certainly that should be redacted.  To the extent

20  that anything was going to be disclosed publicly, certainly any

21  personal identifying information should be redacted.

22         If there are confidential sources, I think subpart 4

23  of that section certainly says you can't disclose that type of

24  information.  So I think you need to look at those sections and

25  see if you can reach agreement on what appropriate redactions

1    there should be.

2          Based on what's been indicated here, we're not dealing

3    with any CRs that involve pending or active or contemplated

4    proceedings.  So the first two subparts of this section don't

5    apply.

6          MR. LIPSCHULTZ:  Although, Judge, I believe there is

7    an open CR as we speak.

8          THE COURT:  Actually I thought that Mr. Noland said

9    that all the ones that have been produced were completed, that

10   there were a couple, one or two, open ones.  I can't remember

11   what you said.

12         MR. NOLAND:  Yes, your Honor.

13         THE COURT:  But that those had not been produced yet.

14         MR. NOLAND:  That's correct, your Honor.

15         THE COURT:  And that you were asserting on that the --

16   basically the deliberative process, investigative --

17         MR. NOLAND:  Bond -- yes, sir.

18         THE COURT:  Correct.  Goes by a number of different

19   names.  But we're all talking about the same thing.

20         So that -- that's really not at this point the focus

21   of my order because those haven't been produced yet.

22         MR. LIPSCHULTZ:  I understand.

23         THE COURT:  All right.  So how long would it take you

24   to sit down and figure out whether you -- you know, what needs

25   to be redacted and to submit a revised protective order in

1   light of my ruling?

2           MR. NOLAND:  Your Honor, could I ask for 14 days?

3   And --

4           THE COURT:  Sure.

5           MR. NOLAND:  -- simply out of no disrespect

6   whatsoever, but I'm going to have to discuss this with the

7   client and certainly weigh the options of what --

8           THE COURT:  Sure.

9           MR. NOLAND:  -- what -- since there is so much

10  litigation on this particular issue, and I know --

11          THE COURT:  I know.

12          MR. NOLAND:  -- there is motion to reconsider it seems

13  like filed by either side depending on the outcome or perhaps

14  other procedural avenues.

15          THE COURT:  Right.

16          MR. NOLAND:  So if I could raise just --

17          THE COURT:  But the answer to that question, before

18  you move to another point, 14 days is fine.

19          MR. NOLAND:  Thank you very much.

20          MR. LIPSCHULTZ:  And let me just say that at first

21  glance, at first glance I don't see having any problems with

22  any writ actions.  It's never been our interest to reveal

23  private information.

24          THE COURT:  No.  And I'm not saying that it was.  But

25  I just wanted to make sure that --

1          MR. LIPSCHULTZ:  Sure.

2          THE COURT:  -- you know, you all were on the same page

3    about what should be redacted if something was going to be

4    disclosed publicly, and that we don't have something disclosed

5    and then you have a fight about it later, because I don't think

6    there is any urgency to go around disclosing it.

7          MR. NOLAND:  And now that we are discussing that,

8    if -- to the extent we get to that point --

9          THE COURT:  Yes.

10          MR. NOLAND:  -- before Judge Shadur, the procedure

11    that he worked out in Padilla, that the parties worked out with

12    the Court's involvement, was that the plaintiff went through

13    the documents, made the redactions, any additional ones the

14    plaintiffs felt appropriate or necessary under the Court's

15    ruling, under Judge Shadur's ruling, provided the documents to

16    the defense.  The defense then had a period of time within

17    which to say yea or nay or make additional redactions.

18          And as it turns out in Padilla, there was also a

19    provision that said that if the defendants believed that any

20    particular CR or any particular information in that CR met the

21    good-cause standard under 26(c), defense could raise that at

22    that time.  That's the state -- that's the current status of

23    Padilla.  We did raise that, and that's been pending since

24    October.  So we --

25          THE COURT:  I'm sorry.  What's been pending?

1          MR. NOLAND:  Our submission to Judge Shadur --

2          THE COURT:  I see.

3          MR. NOLAND:  -- essentially quarreling with the

4    plaintiffs and, you know, on a specific CR-by-CR basis of why

5    this particular CR or that particular CR should still remain

6    under the protective order despite kind of Judge Shadur's I

7    guess maybe general ruling.

8          THE COURT:  I think that right now he issued a general

9    ruling, I would suspect, because the issue probably came to him

10   in a similar way that it came, which was as a general

11   proposition.  The CRs are categorically subject to

12   confidentiality.  He rejected that proposition and then

13   basically said, but as is often the case, there may be

14   particular instances where there is some important or

15   compelling reason that that should be protected.  And so he, I

16   would expect, invited people to bring that to his attention.

17         MR. NOLAND:  That -- that is what he did, and that may

18   be one of our avenues of something we want to raise with your

19   Honor in some time --

20         THE COURT:  That's fine.  If that's what you do, I

21   will certainly entertain it.  Obviously talk with each other

22   about that first.

23         But in looking at whether a particular CR file might

24   meet that standard, I think it is useful to look at the subpart

25   D of the Freedom of Information Act, because it lays out a

1    number of considerations that I think, you know, in certain

2    cases might or might not apply.  You know, will disclosure

3    unavoidedly disclose the identity of a confidential source or

4    will endanger the life or physical safety of law enforcement

5    personnel or something of that character.

6          So I think you have to look on a file-by-file basis to

7    see if you think that there is reason for it not to be produced

8    or where -- or maybe put another way, whether production

9    without more could raise one of these concerns.  But also then

10   to look at whether that concern can be addressed by things such

11   as redaction.

12         So I'm happy to let the parties engage in that

13   process.  And if you think -- you have experience with that in

14   the Padilla case, I take it, Mr. Noland.

15         MR. NOLAND:  Yes, your Honor.

16         THE COURT:  I don't know if you were party to that.

17         MR. LIPSCHULTZ:  Not a party to that case.

18         THE COURT:  So based on the experience that you had,

19   do you think that two weeks is a sufficient time to accomplish

20   that?

21         MR. NOLAND:  No.

22         THE COURT:  All right.  What do you think is a

23   reasonable time?

24         MR. NOLAND:  Thirty days, your Honor.

25         THE COURT:  Well, I am okay with that so long as at

1   the end of 30 days we have everybody's position, you know, in

2   all of it, which means that the position, for instance, as to

3   which files, you know, could be produced with certain

4   redactions, which files you think couldn't be.

5          And -- and I do have to say, Mr. Noland, that I'm

6   taking you, you know, at your word that you're looking at a

7   file-by-file basis.

8          MR. NOLAND:  That's what we did.  We -- with Judge

9   Shadur we prepared a -- essentially what was kind of a

10  spreadsheet memorandum CR by CR in which we raised particular

11  and specific arguments.  We submitted that to the Court as well

12  as with the -- Judge Shadur asked for the CRs themselves.

13         THE COURT:  Sure.

14         MR. NOLAND:  And so --

15         THE COURT:  May I ask a question about that?  Were

16  there any CRs that weren't on the chart?

17         MR. NOLAND:  No.  That -- I will say this, your Honor,

18  in that particular case, I -- that is an SOS, a special

19  operation services case.  And so it was our -- one of our

20  arguments in that case is that it was particularly important

21  because of a criminal investigation that was ongoing.

22         THE COURT:  All right.  We don't have that here.

23         MR. NOLAND:  That's correct.  There was a -- that --

24  not at this time, that's right.  The state did -- there was,

25  from the newspapers we understand, an investigation of Officer

```
 1   Parker.  This state has chosen not to indict or prosecute him.

 2           THE COURT:  And so I -- I raise that point because I

 3   think that you certainly have the right to look at these files

 4   on a file-by-file basis to see if there is good cause.  And I

 5   do commend to you this -- these considerations in subpart D of

 6   the Freedom of Information Act section we've been talking

 7   about, that they shouldn't be public either in whole or in

 8   part.  But I don't want this to be a backdoor way to simply

 9   reassert what has been rejected, which is they can never be

10   public.  All right?

11           MR. LIPSCHULTZ:  I understand the Court's ruling.

12           THE COURT:  Okay.  Then I'll give you 30 days to

13   submit, you know, a filing.  What I'd like is it to be -- I'd

14   like it to be a joint filing where it reflects what agreements

15   the parties have with respect to production of certain CRs,

16   where the disagreements are and what the specific elements of

17   disagreement are.  Okay?

18           MR. NOLAND:  Understood.

19           THE COURT:  And once I see that, I can decide what the

20   best way may be to resolve any of those disputes, you know,

21   whether I need to look at the files, whether I need more

22   briefing, some of each.  Okay?

23           MR. NOLAND:  Can I ask one point of clarification --

24           THE COURT:  Sure.

25           MR. NOLAND:  -- and that is, because I know when I
```

1  talk to the client about it there will be questions.

2         THE COURT:  Yes.

3         MR. NOLAND:  If in fact a Rule 72 option is chosen by

4  my client --

5         THE COURT:  Yes.

6         MR. NOLAND:  -- would this order then today be subject

7  to this kind of meet-and-confer and additional submission,

8  which we are going to submit in 30 days?  Or would this be the

9  day, you know, triggering our time period under Rule 72 in

10  order to challenge?

11         THE COURT:  Oh, I see what you're saying.

12         MR. NOLAND:  Kind of a final order type thing for the

13  appellate court.  I understand it's different.  I just would

14  not want to be in a position of missing a deadline --

15         THE COURT:  No, I understand.

16         MR. NOLAND:  -- if in fact that's what the client

17  choose to do.

18         THE COURT:  I understand.  Well, what is your pleasure

19  on that, Mr. Lipschultz?

20         MR. LIPSCHULTZ:  Well, Judge, I would recommend that

21  the date this Court issues the ruling would be the day the

22  clock --

23         THE COURT:  The day that I issue the ruling with

24  respect to the amendment to the protective order --

25         MR. LIPSCHULTZ:  Correct.

1      THE COURT:  -- that I actually enter the amended

2  protective order?

3      MR. LIPSCHULTZ:  Correct.

4      MR. NOLAND:  That's fine.

5      THE COURT:  Well, may -- look, maybe that's a useful

6  process anyway because then when people make decisions about

7  what course of action they want to take, they can see, you

8  know, the whole array.

9      MR. NOLAND:  And the reason in Padilla is the

10 reason -- an interlocutory appeal was asserted.

11     THE COURT:  What's the status of that, by the way?

12     MR. NOLAND:  The -- ultimately the plaintiffs filed a

13 motion to dismiss as premature.  The city's appellate law

14 department filed a brief in response saying essentially -- I'd

15 ask not to be -- hopefully no admissions because I didn't write

16 it, and I can't recall exactly what it said.  But my -- my

17 recollection, it was essentially that we agree with that to a

18 certain extent.  We think that the Seventh Circuit should hold

19 it in abeyance until Judge Shadur rules on that submission --

20     THE COURT:  Okay.

21     MR. NOLAND:  -- I referred to to the --

22     THE COURT:  And the Seventh Circuit has agreed to do

23 that?

24     MR. NOLAND:  I don't believe there has been any --

25 they haven't agreed or disagreed.  There hasn't been an order

1   issued in response.

2          THE COURT:  Okay.  And how long has that been?

3   Several months?

4          MR. NOLAND:  I believe it's been since November.

5          THE COURT:  Okay.  All right.

6          Well, why don't we do this:  I've indicated today how

7   I interpret this provision, and I indicated that I want the

8   parties to tender a, you know, revision to the protective order

9   consistent with the ruling.  So why don't you submit that at

10  the 30-day-out period as well.  So then I'll have all that in

11  front of me, and I'll enter, once I see all of that and

12  entertain any further argument I may need, an order that will

13  allow you to decide on the basis not only of this

14  interpretation of or the ruling on confidentiality but how it

15  applies to each file.  There is a dispute.  What options you

16  want to pursue.

17         MR. NOLAND:  Thank you, your Honor.

18         THE COURT:  All right?

19         MR. LIPSCHULTZ:  Judge, can I just add --

20         THE COURT:  Thirty days will be then, make it --

21         MR. LIPSCHULTZ:  I would just like to add one point

22  that may or may not come up in our deliberations.  But it'll

23  be -- it will be the plaintiff's position that because Officer

24  Parker is no longer an officer, he is no longer subject to the

25  adjudication process whatsoever.  So I think that's a

1 particularly important fact for this protective order and any
2 clarifications therefrom. I don't think Parker can any longer
3 be subject to the jurisdiction of the police board.
4      THE COURT: And are you making that observation for
5 its significance, in your mind, with respect to the files that
6 have been produced or with respect to the pending
7 investigations?
8      MR. LIPSCHULTZ: Both.
9      THE COURT: Well, I guess some of that goes to what
10 subpart N is designed to protect. And certainly I think that
11 part of what it's designed to protect is to some extent the
12 deliberative process.
13      But I understand what you've said. I won't say that I
14 understand exactly how you may use that later. But in the
15 fullness of time, maybe I will because you will explain it in
16 the context of some concrete argument.
17      MR. LIPSCHULTZ: Very good, Judge.
18      THE COURT: All right? Anything further? Okay.
19 Thanks for coming over.
20      MR. NOLAND: Thanks for your time, your Honor.
21      THE COURT: All right. And we have a status May 27.
22 So I think this time frame works, you know, suitably for
23 everybody in terms of getting this before me. And I can take a
24 look at it before the point is out.
25      MR. NOLAND: Thank you very much.

25

1          THE COURT:   Thanks a lot.

2          MR. LIPSCHULTZ:   Thank you for your time.

3      (Which were all the proceedings had at the hearing of the

4       within cause on the day and date hereof.)

5                          CERTIFICATE

6          I HEREBY CERTIFY that the foregoing is a true, correct

7   and complete transcript of the proceedings had at the hearing

8   of the aforementioned cause on the day and date hereof.

9

    /s/Alexandra Roth                              4/8/2010
10
    _____      _____
11  Official Court Reporter                    Date
    U.S. District Court
    Northern District of Illinois
12  Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25