# EXHIBIT 9

```
 1   TRANSCRIBED FROM DIGITAL RECORDING

 2             IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 3                     EASTERN DIVISION

 4   MARIO VASQUEZ,                      )
                                         )
 5             Plaintiff,                )
                                         )
 6          vs.                          )  No. 09 C 4529
                                         )
 7   JOE DORTHA PARKER and the CITY OF   )
     CHICAGO,                            )  Chicago, Illinois
 8                                       )  May 12, 2010
               Defendants.               )  8:35 A.M.
 9
                 TRANSCRIPT OF PROCEEDINGS - Motion
10     BEFORE THE HONORABLE SIDNEY I. SCHENKIER, Magistrate Judge

11   APPEARANCES:

12   For the Plaintiff:       GREGORY E. KULIS AND ASSOCIATES
                              30 North LaSalle Street
13                            Suite 2140
                              Chicago, Illinois  60602
14                            BY:  MR. DAVID STEVEN LIPSCHULTZ

15   For Defendant Parker:    QUERREY & HARROW, LTD.
                              175 West Jackson Boulevard
16                            Suite 1600
                              Chicago, Illinois  60604
17                            BY:  MS. GHAZAL SHARIFI

18   For Defendant City:      DYKEMA GOSSETT PLLC IL
                              10 South Wacker Drive
19                            Suite 2300
                              Chicago, Illinois  60606
20                            BY:  MR. DANIEL MATTHEW NOLAND

21
                      PAMELA S. WARREN, CSR, RPR
22                     Official Court Reporter
                      219 South Dearborn Street
23                          Room 1928
                      Chicago, Illinois   60604
24                         (312) 294-8907

25   NOTE:  Please notify of correct speaker identification.
```

1    (Proceedings held in open court:)

2         THE CLERK:  09 C 4529, Vasquez versus Parker, motion.

3         MR. NOLAND:  Good morning, your Honor.  Dan Noland for

4    the City of Chicago, movant.

5         MS. SHARIFI:  Good morning, your Honor.  Ghazal

6    Sharifi on behalf of Officer Parker.

7         MR. LIPSCHULTZ:  Good morning, your Honor.  David

8    Lipschultz for the plaintiff.

9         THE COURT:  Good morning.  I have reviewed the city's

10   motion to reconsider.  I guess on this issue everybody gets a

11   motion to reconsider.  Right?

12        MR. NOLAND:  I have seen a few of them filed, yes,

13   your Honor, depending on the way it goes.  Right.

14        THE COURT:  And I have reviewed some of the opinions

15   on reconsideration, Judge Dow's ruling on reconsideration in a

16   case before him, Judge Valdez's ruling on reconsideration in

17   the Masias (phonetic) case.

18        I'm going to deny this motion to reconsider.  There

19   are a number of arguments that I think largely rehash some of

20   the arguments that were made before, which, of course, is not

21   really subject to reconsideration.

22        But there are some other things that are raised, and I

23   do want to address them.

24        MR. NOLAND:  Yeah.  And may I -- I understand.  I just

25   -- before your Honor gets into the ruling, you probably know it

1    already, you always beat met to the punch on these things, but

2    there was a ruling two days ago by Judge St. Eve in the

3    Livingston case.

4           THE COURT: Okay.

5           MR. NOLAND: And so I would just like to make that for

6    the record --

7           THE COURT: Sure.

8           MR. NOLAND: -- be part of it --

9           THE COURT: Sure.

10          MR. NOLAND: -- which is -- I can tender to the Court

11    or however you --

12          THE COURT: Sure. Well, there is going to be lots of

13    rulings because this issue comes up.

14          But let me give you my analysis, at least with respect

15    to some of the issues that I think maybe aren't necessarily

16    rehashed. Although the city does again argue that the CRs are

17    related to adjudication, so as to fall within the exception and

18    Section 107-(1)(n), and I have said before that I don't find

19    that to be the case, at least with respect to CRs that do not

20    progress to the superintendent or police board level, which is

21    ones that we were talking about here based on the oral argument

22    that we had before. I think that if the CR is not sustained as

23    deemed unfounded, that is not related to an adjudication

24    because it doesn't go any farther. It is not related to an

25    adjudication.

1      Let me give you a parallel which may be imperfect, but

2  it illustrates my thinking.  Let's say that somebody is fired

3  from a job, and they have a claim that they wish to file that

4  that termination violates Title VII.

5      As a prerequisite to going into federal court, you

6  have to file a charge with the EEOC.

7      The EEOC does not adjudicate charges.  The EEOC will

8  investigate, will often try to mediate.  And at the end of an

9  EEOC process, whether it is terminated by the issuance of a

10  right to sue letter or a finding of substantial evidence or a

11  finding of no substantial evidence, the EEOC mission is over.

12      That is not an adjudication.  The person may then go

13  to federal court, may not go to federal court.

14      If the person doesn't go to federal court and the

15  matter no -- never progresses beyond that EEOC investigative

16  phase, I would be hard pressed to conclude that what happened

17  at the EEOC was related to an adjudication because there never

18  was an adjudication.

19      The fact that there is this lawsuit filed, and as part

20  of that lawsuit, the EEOC file was produced and there are

21  witness statements in it that will be produced in the lawsuit

22  and are part of that adjudicative process, I think you would

23  say it is related to an adjudication.

24      But I think that that draws -- that parallel, I think,

25  demonstrates the duality and the separation between what is

1   investigation and what is adjudication, and where an

2   investigation may be related to the adjudication and where it

3   is not.  So I hold to my earlier position and interpretation

4   that the CR files, the CR investigation is not inextricably

5   related to an adjudication.

6           Now there is an argument that was raised in the motion

7   to reconsider that the proceedings at IPRA are themselves an

8   adjudication.  And I rejected that before, I still reject it.

9   And I think that the city never really comes to grips with the

10  police board's own assessment of what the respective roles are

11  of IPRA, the police department, and police board.  And I think

12  it is useful to quote that again from the police board

13  publication entitled:  Allegations of Police Misconduct, a

14  Guide to the Complaint and Disciplinary Process, issued in

15  August 2009 just, coincidentally, the same month that the

16  Freedom of Information Act was amended.

17          And it reads as -- quotes as follows:  IPRA, the

18  police department, and the police board have different roles.

19  The responsibility to receive complaints rests with IPRA,

20  depending on the nature of the allegations.  Either IPRA or the

21  police department, IAD, will investigate the complaint.  The

22  police board's role is to adjudicate the complaints, that is

23  similar to the court, to a court.

24          And I think that that bears out that what happens at

25  IPRA or IAD is not an adjudication.  And that's in words of the

1   police board itself, it is an investigation that is different

2   that an adjudication.  So I don't find that argument

3   persuasive.

4        I also saw the reference in the motion to reconsider

5   suggesting that the passage of the amendment to the Freedom of

6   Information Act was a reaction to the Gekas decision, which was

7   something that I think perhaps Judge Dow may have suggested in

8   his rulings on reconsideration.

9        But it is always in my mind perilous to infer what the

10  legislature had in mind beyond the language that the

11  legislature used in the absence, certainly, of any legislative

12  history, of any statements by representatives.  And there are

13  none that I think Judge Dow cited.  And I don't think there is

14  any legislative history that reflects any such statements.  And

15  I'm quite confident that if there were, the city would have

16  brought them to my attention.

17       But one of the things that I also looked at was kind

18  of the timeline of this bill.  The Gekas decision was issued on

19  July 20th of 2009.  The amendment to the FOIA was passed on

20  August 17th, 2009, in Public Act 96-542, Senate Bill 189 to be

21  effective, of course, January 1st of 2010.

22       That bill was first introduced in February of 2009.

23  And I think more important for our purposes, the very

24  significant amendments to the exemptions under FOIA, under

25  140/7(1), those were actually first marked up in the bill in

1   May of 2009, May 28, 2009.  So we're talking about these

2   proposed amendments actually were in the bill prior to Gekas.

3          And given the overall very extensive changes in the

4   Freedom of Information Act exemptions that this bill created,

5   and given that they were introduced into the legislation prior

6   to Gekas, it is difficult for me to ascribe to the legislature

7   a motive in the legislation of overruling Gekas.

8          One other thing in terms of legislation that I suppose

9   I should point out is that there is another bill that Judge

10  Valdez made reference to her in her ruling on reconsideration,

11  Senate Bill 29-78 that was introduced in February of this year,

12  that seeks to amend 140/7(1)(n), the one section that we have

13  been focusing a lot of attention on, to, among other things,

14  expand the exemption to records not only relating to

15  adjudication but also to investigation and settlement.

16         And I think that if one were to try to read

17  legislative tea leaves without knowing or seeing any statements

18  by the legislature, legislators as to why this amendment was

19  offered, one could certainly conclude that they wanted to get

20  at what the city is arguing about now, whether these CR files

21  should be exempt because they are investigative files.

22         Now that bill is pending.  Where it is I don't know.

23  It certainly hasn't passed.  But I think that if the

24  legislature passes this amendment, I mean, we may be again

25  dealing with a different situation.  But that is right now a

1   bill and not law.  So I point that out only for the purpose of

2   shedding some light on perhaps the interpretation of the

3   statutory language as it now exists.

4         I have also considered the argument that this -- these

5   materials would be subject to the deliberative process which I

6   don't find persuasive.  I don't find persuasive.

7         So for those reasons the motion to reconsider is

8   denied.  But I wanted you to have my thinking --

9         MR. NOLAND:  Thank you, your Honor.

10        THE COURT:  -- on it.

11        Now I received the joint statement regarding good

12   cause for the CR files to be treated as confidential.  And this

13   is a joint statement meaning it reflects agreement.

14        MR. LIPSCHULTZ:  It does.

15        THE COURT:  Now I think there were eight files

16   referenced here.  Is that correct?

17        MR. NOLAND:  That sounds about right.

18        THE COURT:  Okay.

19        MR. NOLAND:  I can count them.  I have got the same

20   document.

21        THE COURT:  Are there -- the reason I ask is because

22   when we were together last month when I ruled, I asked how many

23   files there were at issue, and the number that was raised was

24   closer to 20 as I recall.

25        So I'm just wondering is this simply the entire

1  universe and the 20 was not correct or are there other files

2  where there is dispute?

3       MR. NOLAND:  There are -- it turned out there were 13

4  files that hadn't been produced.

5       THE COURT:  Okay.

6       MR. NOLAND:  We -- in this joint statement we had

7  agreed to these eight.  There is five others then that would be

8  subject to the release if plaintiff so chooses --

9       THE COURT:  Okay.

10      MR. NOLAND:  -- under the --

11      THE COURT:  All right.

12      MR. NOLAND:  -- I guess the paradigm we have set out

13 in the proposed amended revised protective order.

14      THE COURT:  All right.  And do you have that

15 protective order that is ready for me to look at yet?

16      MR. NOLAND:  Yes.  That was attached as the final

17 exhibit --

18      THE COURT:  Okay.

19      MR. NOLAND:  -- to our motion to reconsider or in the

20 alternative --

21      THE COURT:  Okay.

22      MR. NOLAND:  -- which would be --

23      THE COURT:  Is it --

24      MR. NOLAND:  I have it right here.

25      THE COURT:  I have it here.  Is it -- and this is --

1          MR. NOLAND:  Exhibit 6.

2          THE COURT:  Okay.

3          MR. NOLAND:  And I can point.  There is two paragraphs

4     that are changed.

5          THE COURT:  All right.  Which would be --

6          MR. NOLAND:  Which are --

7          THE COURT:  What are those?

8          MR. NOLAND:  Paragraph A 6 --

9          THE COURT:  Yes.

10          MR. NOLAND:  -- and paragraph C 9 B.

11          And they are based on the Padilla protective order

12     that was entered by the -- the revised one entered by the

13     Court.

14          THE COURT:  Okay.  Let me just focus on these two

15     paragraphs for a moment.

16          (Brief interruption.)

17          THE COURT:  The footnote in the -- the footnote to

18     paragraph A 6 where the city objects --

19          MR. NOLAND:  It is simply to preserve my record, your

20     Honor.

21          THE COURT:  That's just to preserve the record.

22          MR. NOLAND:  Yes.

23          THE COURT:  But given my ruling, this articulation of

24     confidential matter is acceptable.

25          MR. NOLAND:  Okay.

```
 1              THE COURT:  Is that -- I'm asking you.
 2              MR. NOLAND:  Ah, yes.
 3              THE COURT:  And, you know --
 4              MR. NOLAND:  Yes.
 5              THE COURT:  -- I understand you're not waiving the
 6    argument that the CR should be confidential in their entirety.
 7    I have ruled you're preserving that objection.
 8              But, given my ruling, the way that this is articulated
 9    is acceptable to the city?
10              MR. NOLAND:  Yes, your Honor.
11              THE COURT:  All right.
12              MR. NOLAND:  And to the plaintiff.
13              THE COURT:  All right.
14              All right.  This seems appropriate.
15              And it's agreed on both sides?
16              MR. LIPSCHULTZ:  It is, Judge.
17              THE COURT:  All right.  Then I'll enter this revision
18    to the protective order.
19              MR. NOLAND:  Thank you, your Honor.
20              THE COURT:  And that will be entered today.
21              So these particular eight files will be subject to the
22    protective order?
23              MR. LIPSCHULTZ:  Correct, Judge.
24              THE COURT:  All right.  And I have reviewed them.  I
25    do think it is appropriate.  There has been cause for that.  So
```

1    for purposes of their coverage under the protective order, I

2    will enter an order today that identifies the CR numbers as

3    files that will subject to the protective order.

4              MR. NOLAND:   Okay.

5              THE COURT:   So there will be no dispute about that.

6              MR. NOLAND:   Thank you, your Honor.

7              THE COURT:   All right.   What else is going on in the

8    case?

9              MR. NOLAND:   If I just can bring one thing up on

10   this --

11             THE COURT:   Yes.

12             MR. NOLAND:   -- and we -- under C 9 B there is a

13   procedure, so --

14             THE COURT:   Yes.

15             MR. NOLAND:   -- Mr. Lipschultz or the plaintiff's

16   counsel, will if they intend to release any --

17             THE COURT:   All right.

18             MR. NOLAND:   -- the procedure would be they would

19   actually make the copies of what they intend to release,

20   provide them to us so we can essentially check them for the

21   proper redactions.

22             THE COURT:   Exactly.

23             MR. NOLAND:   So I don't even know if I -- I was going

24   to ask for essentially a -- I guess a stay so we have a period

25   of time if we want to take a Rule 72 objection after talking to

1    the client --
2            THE COURT:  Okay.
3            MR. NOLAND:  -- or not.  So I think I should make that
4    request anyway.  Although I guess it is almost premature
5    because he hasn't sent me that -- those documents yet.
6            THE COURT:  Right.  We're talking about those five
7    files?
8            MR. NOLAND:  Yes.
9            THE COURT:  All right.
10           MR. NOLAND:  I --
11           THE COURT:  Do you intend to do something with them in
12   the next 14 days?
13           MR. LIPSCHULTZ:  I do not.
14           THE COURT:  Okay.
15           MR. NOLAND:  Enough from me, your Honor.
16           THE COURT:  All right.
17           MR. NOLAND:  Thank you.
18           MR. LIPSCHULTZ:  Judge, can I address one issue?
19           THE COURT:  Sure.
20           MR. LIPSCHULTZ:  Knowing well the rule that once a
21   ruling has been made in one's favor I should stop talking, but
22   I do want to make one point in anticipation of the city
23   possibly acting on Rule 72.
24           In this particular case, and I mentioned this in
25   closing at the last court appearance, defendant Parker is no

1   longer a police officer.  And it will be the plaintiff's

2   strenuous argument should this proceed to the district judge

3   that this whole issue of adjudication is moot.  The police

4   board no longer has jurisdiction over defendant Parker.  And

5   I guess as -- I intend that as a soft shout across the bow of

6   the city that I think it would be an abuse of process to --

7            THE COURT:  Shout across the bow is such a harsh

8   phrase.  It's a heads-up.

9            MR. LIPSCHULTZ:  Just a sense that I think it is now

10  taxing judicial resources to continue litigating this issue,

11  especially -- and probably only in light of defendant Parker's

12  status --

13           THE COURT:  All right.

14           MR. LIPSCHULTZ:  -- as a former employee.

15           So thank you for hearing me out on that.

16           THE COURT:  That's fine.  Your statement is, I'm sure,

17  duly noted by all.

18           MR. NOLAND:  I have heard it.

19           THE COURT:  All right.

20           MR. NOLAND:  And disagree.

21           THE COURT:  And so your statement is duly noted by

22  all.

23       (Laughter.)

24           THE COURT:  So now, other than this, what's going on

25  in the case?

1    MR. LIPSCHULTZ:  You mean there is more than this?

2    THE COURT:  I don't know, that's what I am trying to

3 find out.

4    MR. LIPSCHULTZ:  We have to get to work.

5    THE COURT:  Okay.  Well, you have a schedule from

6 Judge Holderman.  So -- let's see.  I'm trying to find my notes

7 here.

8    Discovery -- I guess plaintiff -- expert disclosures

9 start in September, right?

10    Non-expert discovery closes August 16.

11    So you're right, I guess everybody has got to get to

12 work.

13    MR. NOLAND:  We have.  The parties have exchanged --

14 done most of the written discovery that the plaintiff's counsel

15 has been --

16    THE COURT:  Uh-huh.

17    MR. NOLAND:  -- I know working on responses to our

18 Monell interrogatories.  And so we truthfully haven't gotten

19 really started on --

20    THE COURT:  Okay.

21    MR. NOLAND:  -- the Monell-related litigation because

22 we're really waiting for their -- what their position is to

23 kind of steer this litigation where it is going to go in terms

24 of that.

25    The underlying litigation, obviously, is not, not that

1    intensive with -- since that there weren't many players

2    involved --

3              THE COURT:  Okay.

4              MR. NOLAND:  -- in this particular arrest.

5              So we're still holding on hope that the plaintiff will

6    accept the stipulation that the city had previously offered.

7    And who knows, maybe they will as to the Monell claim.  But --

8              THE COURT:  What stipulation did you offer?

9              MR. NOLAND:  That the -- your Honor, I think, has seen

10   them before, the stipulation --

11             THE COURT:  I have seen different variations --

12             MR. NOLAND:  That the city would -- in the event there

13   is a finding of constitutional violation against Officer

14   Parker, the city will accept a direct judgment against it for

15   compensatory damages and attorneys's fees relative to that.

16             THE COURT:  Okay.  So is that something that the

17   plaintiff is considering or --

18             MR. LIPSCHULTZ:  We reject the stipulation, Judge --

19             THE COURT:  You reject it.

20             MR. LIPSCHULTZ:  -- for --

21             THE COURT:  Okay.

22             MR. LIPSCHULTZ:  If there is wrongdoing by the city,

23   we seek judgment against the city based on the city's potential

24   conduct or omissions.

25             THE COURT:  Okay.  Well, that will certainly shape

1    discovery.  Right?

2            Judge Holderman I think already denied a motion to

3    bifurcate and stay on that.

4            Just keep in mind that if you think that you need any

5    adjustment to the schedule, that's got to be done by Judge

6    Holderman.  All the district judges have their own practices

7    with respect to, you know, discovery schedules.  But Judge

8    Holderman sets his schedule, and he's the one who has to revise

9    it.

10           MR. LIPSCHULTZ:  Thank you.

11           THE COURT:  All right.  So you ought to just keep that

12   in mind as you proceed because you shouldn't assume that you

13   will get extra time.

14           MR. LIPSCHULTZ:  Very good, your Honor.

15           THE COURT:  All right.  What would make sense for

16   another status?

17           MR. LIPSCHULTZ:  45 days?  60 days?

18           THE COURT:  Some time midway between now and the

19   August date?

20           So why don't we see you -- how about June 30th?

21           MR. LIPSCHULTZ:  That's fine, Judge.

22           THE COURT:  Does that work for everybody?

23           MR. NOLAND:  That's fine, Judge.

24           THE COURT:  9:00 A.M.

25           MR. NOLAND:  Thank you.

18

1      MR. LIPSCHULTZ:   Thank you, your, Honor.

2      (Which concluded the proceedings in the above-entitled

3   matter.)

4                        CERTIFICATE

5      I HEREBY CERTIFY that the foregoing is a true, correct

6   and complete transcript of the proceedings had at the hearing

7   of the aforementioned cause on the day and date hereof.

8

9   /s/pamela s. warren                May 13, 2010
    Official Court Reporter                 Date
10  United States District Court
    Northern District of Illinois
11  Eastern Division

12

13

14

15

16

17

18

19

20

21

22

23

24

25